**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DONALD MASSEY,

                          Plaintiff,

v.

RUSSELL N.A. CECIL, M.D.; MOHAWK VALLEY
ORTHOPEDICS, P.C.; ST. MARY'S HEALTHCARE; ST.
MARY'S HOSPITAL AT AMSTERDAM; "JOHN DOE"; THE
ORTHO STORE, INC.; MEDICAL DEVICE BUSINESS
SERVICES, INC.; DEPUY ORTHOPAEDICS PRODUCTS;
DEPUY ORTHOPAEDICS, INC.; DEPUY, INC.; DEPUY
SYNTHES, INC.; DEPUY SYNTHES PRODUCTS, INC.;
DEPUY SYNTHES SALES, INC., individually and doing
business as DEPUY SYNTHES JOINT RECONSTRUCTION;
SYNTHES, INC.; SYNTHES USA LLC; SYNTHES USA
PRODUCTS, LLC; SYNTHES USA PRODUCTS, LLC; and
JOHNSON & JOHNSON, INC.,

                          Defendants.

1:19-cv-00049 (BKS/CFH)

---

**Appearances:**

*For Plaintiff:*
Thomas J. DiNovo
Chad A. Jerome
O'Connell & Aronowitz, P.C.
54 State Street, 9th Floor
Albany, NY 12207

*For Defendant The Ortho Store, Inc.:*
Frederick H. Fern
Harris, Beach Law Firm
100 Wall Street, 23rd Floor
New York, NY 10005

*For MDBS, the DuPuy Synthes Defendants, and Johnson & Johnson, Inc.:*
James F. Murdica
Barnes & Thornburg LLP
43 West 43rd Street, Suite 175
New York, NY 10036

*For Defendants St. Mary's Healthcare and St. Mary's Hospital at Amsterdam:*
Jonathan E. Hansen
William D. Yoquinto
Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.
20 Corporate Woods Boulevard
Albany, NY 12211

*For Defendants Russell N.A. Cecil, M.D., and Mohawk Valley Orthopedics, P.C.:*
Jeffery J. Tymann
Alicia M. Dodge
Mandy M. McFarland
Thorn Gershon Tymann & Bonanni
5 Wembley Court
P.O. Box 15054
Albany, NY 12205

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

On October 4, 2018, Plaintiff filed a complaint in New York Supreme Court, Montgomery County, asserting claims of negligence, medical malpractice, breach of warranty, and products liability in connection with his 2016 hip replacement surgery. (Dkt. No. 2). On January 11, 2019, the Removing Defendants[1] removed the action to this Court under 28 U.S.C. § 1446, asserting the existence of subject-matter jurisdiction based on the parties' diverse citizenship under 28 U.S.C. § 1332. (Dkt. No. 1). Currently before the Court are motions filed by Plaintiff, (Dkt. No. 27), Defendants Russell N.A. Cecil, M.D., and Mohawk Valley Orthopedics, (Dkt. No. 22), St. Mary's Healthcare and St. Mary's Hospital at Amsterdam, (Dkt. No. 23), and The Ortho Store's ("Ortho"), (Dkt. No. 28), seeking to remand this action to state court. The Removing Defendants oppose the motions. (Dkt. No. 37). For the reasons set forth below, the motions to remand are granted.[2]

---

[1] For the sake of clarity, the Court refers to Defendants DePuy Orthopaedics, Inc., Synthes USA Products, LLC, DePuy Synthes Sales, Inc., Synthes USA, LLC, Medical Device Business Services, Inc., DePuy Synthes, Inc., DePuy, Inc., Synthes, Inc., and DePuy Synthes Products, Inc.—together with Defendant Johnson & Johnson, Inc.—as the "Removing Defendants." Defendants Russell N.A. Cecil, M.D., St. Mary's Healthcare, St. Mary's Hospital at Amsterdam, and Mohawk Valley Orthopedics are referred to collectively as the "Provider Defendants."

[2] After removal, the Removing Defendants moved to stay this action pending the Judicial Panel on Multidistrict Litigation's decision on a conditional transfer to the Northern District of Texas for inclusion in MDL No. 2244. (Dkt. No. 8). Finding that, unlike the other MDL cases, this case "involves the inappropriate mating of certain hip components," the panel later vacated its conditional transfer order. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, MDL No. 2244 (J.P.M.L. Apr. 3, 2019), ECF No. 2122, at 2. The Removing Defendants' motion to stay is thus denied as moot.

## II. BACKGROUND

### A. Factual Background[3]

On April 4, 2016, Plaintiff "underwent total left hip replacement surgery . . . performed by" Defendant Cecil—an "agent, servant, and/or employee of Defendant Mohawk Valley Orthopedics" ("MVO") and Defendant St. Mary's Healthcare—at Defendant St. Mary's Hospital at Amsterdam in Amsterdam, New York. (Dkt. No. 2, at ¶¶ 1, 95–96, 108, 134). Defendant Ortho supplied hardware, manufactured by certain of the Removing Defendants, that was used in the procedure, including a Pinnacle Gription Acetabular Shell Sector and Altrx Polyethylene Acetabular Liner, a Biolox Delta Ceramic Femoral Head, and an S-ROM Total Hip System Femoral Stem. (*Id.* ¶¶ 195, 215–216). The components installed during Plaintiff's hip replacement, however, were not "appropriately sized" and therefore did not "fit together properly." (*Id.* ¶¶ 202, 223, 248). As a result, "shortly after" surgery, Plaintiff experienced "disassociation of his total hip replacement" requiring "additional surgical revision and repair" and resulting in a "permanent limp." (*Id.* ¶¶ 201, 204, 225, 250). Plaintiff claims that, as a result of the negligent installation of incompatible hip components, he suffered "excruciating conscious pain and suffering, as well as physical, emotional and mental anguish." (*Id.* ¶¶ 101, 128, 155, 182).

Plaintiff asserts medical malpractice and negligence[4] claims against the Provider Defendants, alleging that they breached their duty to "ensure necessary and proper care and

---

[3] On a motion to remand, a court "must constru[e] all factual allegations in favor of the party seeking remand." *Monty v. Home Depot USA, Inc.*, No. 11-cv-00446, 2011 WL 4810865, at *2, 2011 U.S. Dist. LEXIS 117103, at *4 (N.D.N.Y. Oct. 11, 2011) (internal quotation marks omitted). Accordingly, the facts recited here are taken from the Complaint and assumed to be true for the purposes of the parties' motions.

[4] As to the negligence claims asserted against all Defendants, Plaintiff states that he "reserves right to rely upon the doctrine of *res ipsa loquitur* to establish [their] liability and fault." (*Id.* ¶¶ 103, 130, 157, 184). Under New York law, in a "multiple defendant action in which a plaintiff relies on the theory of res ipsa loquitur, a plaintiff is not required to identify the negligent actor. That rule is particularly appropriate in a medical malpractice case such as this in which

3

treatment" to Plaintiff "in accord with the proper practices and procedures" by virtue of their failure to, *inter alia*, "examine the implant hardware products . . . to ensure they correctly matched and were compatible with each other" and "recognize that the implant hardware products . . . did not properly fit together during the surgical procedure." (*Id.* ¶¶ 100, 127, 154, 181). Plaintiff further asserts negligence claims against Defendant Ortho and the Removing Defendants on the basis that, by providing the wrong components, they breached their duty to "provide hardware, products and/or implants that were properly measured, appropriate and compatible with each other," "appropriately sized and that would fit together properly," and "reasonably safe for the Plaintiff" once installed. (*See, e.g.*, *id.* ¶¶ 218–220, 243–245, 325–327, 406–408).[5]

### B. Procedural Background

The Removing Defendants, manufacturers of the hip replacement components alleged to be at issue in this case, filed a notice of removal on January 11, 2019. (Dkt. No. 1). The Removing Defendants are Indiana, Delaware, and New Jersey corporations with their principal places of business in Indiana, Massachusetts, Pennsylvania, and New Jersey. (Dkt. No. 2, ¶¶ 29–77). Plaintiff, Ortho, and the Provider Defendants, on the other hand, are citizens of New York. (*Id.* ¶¶ 2–3, 4–5, 7–8, 10–11, 26–27). The Removing Defendants assert that, because Plaintiff's claims against nondiverse Provider Defendants and Ortho are fraudulently joined (or misjoined) to the action, complete diversity of citizenship between the parties—and therefore jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332(a)—exists. (Dkt. No. 1, ¶ 19).

---

the plaintiff has been anesthetized." *Schmidt v. Buffalo Gen. Hosp.*, 278 A.D.2d 827, 828 (4th Dep't 2000) (citations omitted).

[5] Plaintiff also asserts claims of strict products liability and breach of warranty against the Removing Defendants. (*See, e.g.*, Dkt. No. 2, ¶¶ 254–286, 287–310, 336–368, 369–392). Plaintiff argues, however, that those claims were "pleaded in the alternative" due to the "impending statute of limitations" and Plaintiff's lack of access to the hardware used in Plaintiff's hip replacement. (Dkt. No. 27-6, at 14).

4

### III.    STANDARD OF REVIEW

"Generally, any civil suit initiated in state court over which a district court would have had original jurisdiction 'may be removed by . . . the defendants, to the district court of the United States for the district . . . embracing the place where such action is pending.'" *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019) (quoting 28 U.S.C. § 1441(a)). "Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship." *Id.* (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). The district courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (quoting 28 U.S.C. § 1332(a)). "To remove a case based on diversity jurisdiction, the diverse defendant must aver that all of the requirements of diversity jurisdiction have been met." *Id.* (citing 28 U.S.C. § 1446(a)).

If, however, a district court determines that it lacks subject-matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-cv-1898, 2006 WL 1004725, at *2, 2006 U.S. Dist. LEXIS 20575, at *7 (S.D.N.Y. Apr. 17, 2006). "In making this determination, courts are permitted to look to materials outside the pleadings, 'includ[ing] documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'" *Schulman v. MyWebGrocer, Inc.*, No. 14-cv-7252, 2015 WL 3447224, at *1, 2015 U.S. Dist. LEXIS 68954, at *3 (E.D.N.Y. May 28, 2015) (alteration in original) (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir.2010)). In light of "the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state

5

governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

## IV. DISCUSSION

Plaintiff, Ortho, and the Provider Defendants contend that this case should be remanded because they are all citizens of New York, destroying diversity jurisdiction. The Removing Defendants respond that Defendant Ortho is fraudulently joined to the action because state-law negligence claims against a nonmanufacturing distributor: (i) have no possibility of success under New York law; and (ii) are preempted by federal law. (Dkt. No. 37, at 12–21, 21–25; Dkt. No. 1, ¶¶ 21–35). They further argue that Plaintiff's medical malpractice claims against the Provider Defendants are fraudulently misjoined with the products liability claims against the Removing Defendants because "the factual commonality among the plaintiffs' claims against the different classes of defendants [is] not sufficient to satisfy Rule 20." (Dkt. No. 1, at 13 (quoting *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008))).

### A. Fraudulent Joinder of Ortho

As the Second Circuit has made clear, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection to the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998). "To demonstrate that a non-diverse defendant has been fraudulently joined to defeat diversity, a defendant must show, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings . . . or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 393 (S.D.N.Y. 2009). "Even if non-diverse defendants are joined solely to prevent removal

6

to federal court, fraudulent joinder is not shown if the plaintiff does in fact have a valid claim against the non-diverse defendants." *Brown v. Noxubee Gen. Hosp. (In re Zyprexa Prods. Liab. Litig.)*, No. 08-cv-3249, 2008 WL 4561628, *3, 2008 U.S. Dist. LEXIS 109545, at *70 (E.D.N.Y. Oct. 10, 2008). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461.

"[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006)). "That is, [e]ven though federal law applies to the question of fraudulent joinder, the ultimate question is whether . . . state law might impose liability on the facts involved." *MBIA Ins. Corp.*, 706 F. Supp. 2d at 394 (internal quotation marks omitted). Accordingly, a plaintiff's motion to remand should be denied where "there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 460–61. In making such a determination, "courts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *MBIA Ins. Corp.*, 706 F. Supp. 2d at 394. "New York has liberal pleading rules . . . which require that a plaintiff need only provide 'at least basic information concerning the nature of a plaintiff's claim and the relief sought.'" *Id.* (quoting *Parker v. Mack*, 61 N.Y.2d 114, 117 (1984)).

Here, Plaintiff asserts a claim of negligence against nondiverse Defendant Ortho,[6] (Dkt. No. 2, ¶¶ 227–228), which the Removing Defendants argue is preempted by federal law because Ortho is a "non-manufacturer[ ]of an FDA-approved product." (Dkt. No. 37, at 12–16). The Supreme Court has held that the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA") preempt "those state requirements that are 'different from, or in addition to' any federal requirement that is applied to the device." *Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 194 (E.D.N.Y. 2015) (quoting *Reigel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008)). Here, however, Plaintiff has not alleged that Ortho played any role in the design or labeling of the devices in question. Rather, Plaintiff's allegations are based on Ortho's allegedly negligent conduct in providing the correct devices in the first place. (*See* Dkt. No. 2, ¶¶ 221–222 (alleging that Ortho negligently provided "incorrect and inappropriate hardware, products and/or implants")). As set out in the affidavit of St. Mary's nurse Coleen Snell, a sales representative brings "the components that could be used to replace the hip in a range of part sizes and trials," "then selects the proper parts" after "the surgeon uses the trials to determine the proper sizes." (Dkt. No. 23-8, ¶¶ 3–5). Moreover, the affidavit of former Ortho employee Joe Caramadre is not incompatible with Plaintiff's theory of negligence. Although it states that DePuy "sold . . . its products directly to hospitals" and "Ortho received the components in double-sealed sterile packages," after which the device would be "obtained by a hospital through Ortho," (Dkt. No. 1-2, ¶¶ 5–6), it does not foreclose the possibility that Ortho negligently delivered the wrong device for installation during Plaintiff's hip replacement surgery. (Dkt. No. 1-2). Such a theory of negligence has nothing to do with device requirements preempted by federal law. The core of the

---

[6] Plaintiff also asserts a negligence claim against an unnamed Ortho employee who "sold . . . provided and/or delivered" the incorrectly sized hip components to the Provider Defendants. (Dkt. No. 2, ¶ 196). The citizenship of unnamed defendants, however, is irrelevant to the Court's removal analysis. 28 U.S.C. § 1441(b)(1).

allegations against Ortho is not that it failed to "effectuate changes to the hip components or their labeling," (Dkt. No. 37, at 15), but that Ortho was negligent when it provided the wrong device altogether.[7] Accordingly, the Removing Defendants have failed to establish that Plaintiff's claims against Ortho are preempted.

The Removing Defendants have not cited any caselaw indicating that the conduct alleged is insufficient to make out a cognizable state-law claim for negligence. To state a "negligence claim under New York law, a plaintiff must establish (1) that the defendant owed him or her a duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries. *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 206 (E.D.N.Y. 2004). "In order to determine the existence of a duty in New York, the court should consider and balance the following five factors: (1) 'the reasonable expectations of the parties and society generally; [2] the proliferation of claims; [3] the likelihood of unlimited or insurer-like liability; [4] disproportionate risk and reparation allocation; and [5] public policies affecting the expansion or limitation of new channels of liability.'" *Id.* (quoting *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 611 (1994)). "In New York, the existence of a duty of care is a 'legal, policy-laden declaration reserved for judges.'" *Id.* (quoting *In re Sept. 11 Litig.*, 280 F.Supp.2d 279, 290 (S.D.N.Y. 2003)). Because all factual and legal issues must be resolved in Plaintiff's favor, Plaintiff could be found to have adequately alleged the existence of a duty—i.e., that the parties reasonably expected that a distributor of medical prostheses would provide the correct components for surgery as selected by a medical provider. Further, given

---

[7] Even if Ortho had played a role in developing the devices in question, the Removing Defendants have not identified— and the Court is unable to locate—caselaw demonstrating that negligence claims relating to mislabeled devices are preempted by federal law. *See, e.g.*, *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 251 (S.D.N.Y. 2013) (holding that negligence claim based on mislabeling of device not preempted, explaining that "whether [defendant] accurately labeled the . . . components implanted into plaintiff, and whether any mislabeling caused plaintiff's injuries, will be resolved on summary judgment or at trial").

New York's liberal pleading rules, the Removing Defendants have failed to establish that there is no possibility that the other elements of a negligence claim against Ortho could be asserted in state court. Accordingly, the Court concludes that Ortho has not been fraudulently joined to the action and that complete diversity is lacking.

### B. Fraudulent Misjoinder of the Provider Defendants

The Removing Defendants argue that Plaintiff's medical malpractice claims against the Provider Defendants are fraudulently misjoined. (Dkt. No. 1, at 13). Plaintiff, Ortho, and the Provider Defendants generally respond that Plaintiff's negligence and medical malpractice claims are "based upon the same factual allegations—namely, that incorrect or incompatible parts were used in the plaintiff's hip replacement surgery." (Dkt. No. 23-9, at 10; *see also* Dkt. No. 22-5, at 7–10; Dkt. No. 27-6, at 12–17; Dkt. No. 28-7, at 8–12).

"Fraudulent misjoinder was first articulated by the Eleventh Circuit, which explained that '[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.'" *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *6, 2015 U.S. Dist. LEXIS 96957, at *19 (S.D.N.Y. July 24, 2015) (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). While the Second Circuit has not addressed the doctrine, the "'majority of federal courts' evaluate claims of fraudulent misjoinder by applying the relevant state law rule for permissive joinder rather than the federal rule." *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *3, 2014 U.S. Dist. LEXIS 171654, at *9 (S.D.N.Y. Dec. 11, 2014) (quoting *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-cv-2049, 2013 WL 3729570, at *11, 2013 U.S. Dist. LEXIS 117375, at *60 (E.D.N.Y. May 17, 2013)). "The New York rule of civil procedure governing permissive joinder is nearly identical to its federal

corollary, Rule 20(a), and permits joinder of defendants 'against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences' if 'any common question of law or fact would arise.'" *Id.* (quoting section 1002(b) of the New York Civil Practice Law and Rules ("CPLR")).

Even assuming the applicability of the doctrine of fraudulent misjoinder in this Circuit, the Removing Defendants have not shown that the Provider Defendants are improperly joined under CPLR 1002(b). Plaintiff's negligence claims against all Defendants and medical malpractice claims against the Provider Defendants arise out of the same transaction or occurrence—installation of improperly-sized components during Plaintiff's hip replacement surgery. Although there are divergent questions of law with regard to Plaintiff's other claims—products liability, breach of warranty, and medical malpractice—determination of liability for those claims is necessarily dependent on the same questions of fact. Accordingly, because Plaintiff's claims against the Removing Defendants and the Provider Defendants raise common questions of fact and arise out of the same occurrence, the claims are properly joined. The Removing Defendants' assertion of fraudulent misjoinder therefore fails.

### C. Attorney's Fees

Defendants St. Mary's Healthcare and St. Mary's Hospital at Amsterdam request costs and attorney's fees "with respect to the making of the instant motion" under 28 U.S.C. § 1447(c).

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Assessment of costs and fees against the removing defendants is within the court's discretion and does not require a finding of bad faith or frivolity." *MBIA Ins. Corp.*, 706 F. Supp. 2d at 400 (internal quotation marks omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for

seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, because the Removing Defendants' arguments in favor of removal are weak, St. Mary's motion is not without merit and presents a close question for the Court. On one hand, the Removing Defendants have misconstrued the allegations contained within the Complaint, ignoring the factual basis of Plaintiff's claims against Ortho. On the other, however, they have coherently—if unpersuasively—argued that the nature of Plaintiff's claims against the Provider Defendants warrant a finding that they are misjoined to the product liability claims against them, while generally citing relevant caselaw to that effect. Having carefully considering the briefing, the Court does not find the existence of "unusual circumstances" or that the Removing Defendants' proposed bases for removal were "objectively unreasonable." *Schulman*, 2015 WL 3447224, at *3–4, 2015 U.S. Dist. LEXIS 68954, at *8 (E.D.N.Y. May 28, 2015) (remanding but denying costs and fees, explaining that, "on an order to remand, fee shifting should only occur in 'unusual circumstances,' to avoid discouraging defendants from exercising their 'right to remove'" (quoting *Martin*, 546 U.S. at 140–41)). Accordingly, St. Mary's motion for costs and attorney's fees is denied.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff, Ortho, and the Provider Defendants' motions to remand, (Dkt. Nos. 22–23, 26–28), are **GRANTED**; and it is further

**ORDERED** that Defendants St. Mary's Healthcare and St. Mary's Hospital at Amsterdam's motion for costs and attorney's fees, (Dkt. No. 23), is **DENIED**; and it is further

**ORDERED** that the Removing Defendants' motion to stay, (Dkt. No. 8), is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's pending letter motion seeking a telephone conference, (Dkt. No. 42), is **DENIED as moot**; and it is further

**ORDERED** that this action is **REMANDED** to the Supreme Court of the State of New York, Montgomery County for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Memorandum-Decision and Order to the Clerk of the Supreme Court of the State of New York in Montgomery County for filing in *Massey v. Russell N.A. Cecil, M.D. et al.*, Index No. 2018-753.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: April 23, 2019
Syracuse, New York